question that the requirement of such presentment and notice is an element of the contract existing between the maker and the holder or payee of a draft (Judd v. Smith, 3 Hun, 190; Fairchild v. Railroad Co., 15 N. Y. 337); and the necessity of presentment becomes the more apparent where the draft is payable at sight, since here the time of presentment fixes the maturity of the obligation (1 Wait, Act. & Def. pp. 618–621). In this case no proof of actual presentment, demand, and notice was furnished, but still there was evidence from which the jury could have inferred that these requisite steps had been taken by the payee.

In the course of inquiry as to whether Grim had made a demand upon the defendant personally for the amount of the draft, the following occurred upon Grim's direct examination:

"Q. Did you ask Mr. Unangst for this? A. After it was protested? Yes. Q. What did he say? A. He said he will fix it up with me. Q. And has he? A. No; it is still unpaid, as far as I know."

Since the defendant would have been under no obligation to pay this draft unless it had been first presented to the drawee, his statement, in effect, that he would pay it, in answer to a demand upon him, may well have been taken as an admission that his liability had attached, and so supported an inference of a prior presentment to and refusal by the drawee sufficient to charge him. This was not by any means conclusive proof, but it was some evidence, which, coupled with the defendant's failure to disprove the fact of presentment in any way, was sufficient to take the case to the jury upon this issue. As an admission, the evidence was competent and relevant, and the objection to the allowance of the question whether the draft had been presented to the defendant was therefore not well taken.

We do not feel called upon to enter into an individual discussion of the several other exceptions taken to rulings upon evidence. Suffice it to say that they have been examined by us, and have been found to present no error.

Judgment affirmed, with costs. All concur.

---

(20 Misc. Rep. 374.)

BARR v. STRINGER et al.

(Supreme Court, Special Term, Madison County. May, 1897.)

WILLS—CONSTRUCTION—"EXPENSES OF WIFE."

The will of B. gave his wife a considerable amount of real and personal property, to be in lieu of dower, and then provided: "I set apart $500 for a monument for myself and family. Next, I set apart enough money to defray my own and my wife's expenses." Several legacies were then given to other persons. There was no provision in form for the payment of the testator's debts, though they were considerable. *Held*, that the provision for the expenses of the wife of the testator was intended to refer to her expenses up to the time of the probating of the will and her funeral expenses, and not to all her expenses during her life.

Action by Maria Barr, as executrix of Robert S. Barr, against Mary Stringer and others for the construction of a will.

Harrison W. Coley, for plaintiff.
C. M. Parke, for defendants.

FORBES, J.   This is an action for the construction of the last will and testament of Robert S. Barr, deceased, who died November 15, 1887, at Shell Rock, Minn.   The testator was a resident and inhabitant of the state of New York at the time of his death.   He was temporarily absent for the purpose of transacting business in Minnesota, where he had some real estate.   Having been taken suddenly ill, he called to his aid some person who evidently was unfamiliar with the drafting of wills. It is claimed that the will was made the night preceding his death.   The deceased left, him surviving, no children, but left his widow, the plaintiff, who had been in feeble health for many years.   At the time of the death of Robert S. Barr, his wife was being treated at a private sanitarium in or near the city of Elmira, N. Y., at an expense of about $27 per week.   The plaintiff qualified as the executrix of said will, and entered upon the discharge of her duties as such, on the 11th day of January, 1888; the will having been admitted to probate by and before the surrogate of the county of Madison, N. Y., at that time.   An accounting under said will was subsequently made, in part at least, on the 15th day of April, 1893.   By the decree upon said accounting there was set apart by the surrogate, and retained by the executrix, the sum of $15,201.63, to await the determination of the questions involved in this action.   The total amount of the personal assets of the deceased was $49,928.28.   The difference between the inventoried value of the assets, with increase thereon, and the sum of $15,201.63, was distributed under said will, or credited to the plaintiff, as her share of the assets, or used to pay the debts, the expenses of the administration, etc.   The net value of the assets, excluding the real estate, amounted to $41,472.14.   The controversy out of which this cause of action arose grows out of the construction to be given to the third clause of said will, under subdivision 2 of the complaint, which reads as follows: "Thirdly.   I set apart $500 for a monument for myself and family.   Next I set apart enough money to defray my own and my wife's expenses."   Under the first clause of said will, the deceased gives and bequeaths to his wife his house and lot in the village of Munnsville, all of his stock in the National State Bank of Oneida, and three certain mortgages against persons specified in said will, and he also gives to her two certain promissory notes against persons named in said will.   She is also appointed the executrix of the said deceased, but expressed in form as "her own executrix." The will also directs that the property shall not be appraised, and that the bequests made to the plaintiff shall include (or shall be in lieu of) her right of dower.   This must be held to be in full of all sums coming to her out of said estate, with the exceptions to be hereafter defined under the third clause of said will.

It is claimed on the part of the plaintiff that prior to and at the time of the making of the will the circumstances were such that under the provision of the will in controversy it was intended by the testator to pay all of the expenses of his wife, the plaintiff, during

the period of her natural life. It is contended on the part of the defendants that this provision must be so construed as to entitle the wife to her personal expenses only up to the time of the death of the testator. It will be observed that there is no provision, in form, in the will for the payment of the debts and obligations of the deceased; while it is shown by the decree that the deceased was owing, at the time of his death, about the sum of $3,944.45. This amount must have included the expenses incurred by the testator in taking care of the plaintiff up to the time of his death; so that the question to be decided here is what interpretation must be given to the words, "I set apart enough money to defray my own and my wife's expenses." While, perhaps, as a matter of law, the widow continues to be, in a sense, the wife of the testator, still he seems, in the will, to have spoken of her in the present tense; not as his widow, but as the wife of the then living husband. Had he used the language "the expenses of my widow," it might have been more certain that he intended to provide for her expenses after she ceased to be his wife in fact. Under the laws of this state the husband is bound to support, maintain, and take care of the wife in sickness and in health, so long as there is no disruption of the marital relation; therefore her expenses up to the time of his death were a charge upon, or a debt payable out of, his estate. It will be seen that he set apart to her, giving to her absolutely, about one-fourth the value of his personal estate. Did he intend, in addition to this provision, to set apart an amount of money sufficient to yield the sum of the total expense in maintaining and taking care of her during the balance of her natural life? If this is so, then all of the specific legacies must yield to this provision of the will, the assets of the estate must be converted into money, invested, and the income therefrom must be devoted to that object. This interpretation would clearly exhaust the income, at the most favorable investment of all the specific legacies given to persons other than the wife; for it is conceded that her annual expenses amount to something like the sum of $1,400. All of the provisions of the will must be construed in harmony with the intention of the testator. The court cannot make a new will. Its utmost power is measured by the construction of the will already made, and that construction must be to give the whole will effect and operation, if possible.

It seems to me, rather, that the clause above quoted must be read in connection with that part of the third clause of said will which sets apart $500 for a monument for the testator and his family. His family at that time consisted of his wife and himself. This is the first sum of money set aside for any purpose. It is not a bequest, but a direction to save out of the assets of his estate a certain sum to be devoted to a specific object. Immediately following this paragraph of the will, and coupled with it, is the clause in controversy. The first provision reads as follows: "I set apart $500 for a monument for myself and family. Next, I set apart enough money to defray my own and my wife's expenses." Reading these two provisions in connection with each other, and separating them temporarily from the subjects which follow, as well as from the preceding provision for his wife, it would seem plain that he intended to provide for a monument

which should mark the last resting place of himself and his wife; and also to set aside a sum sufficient to pay all of the expenses of himself and wife up to the time when the will could be probated and go into effect, and to set aside a sum sufficient to meet and to defray the funeral expenses of his wife. He had already made a fairly generous provision for the plaintiff; one which was absolute in its character; a provision which included her dower right. This seems to be the natural and reasonable interpretation of the clause in controversy, leaving in harmony all of the other provisions of the will, and assuring to the testator burial and a monument, and to his wife a sufficient sum, to be invested from his property, to meet the contingent expenses of her interment beside him at his last resting place; and also to provide for her care and maintenance up to the time of the probating of his will, at which time the preceding bequest to the plaintiff would commence to yield an income for her subsequent maintenance. This is the most favorable construction which can be given to the clause in controversy. While the court would be glad to give to the widow of Robert S. Barr all that could possibly be yielded from his estate, still we must remember that it was his will, and we must interpret its provisions according to his intention, with the best light which we have, under the circumstances of this case. I therefore direct that the surrogate of the county of Madison allow the expenses of the wife up to the time of the probating of said will, if not already allowed by the decree; and then set apart, to be invested, a sum which, in his judgment, will be sufficient to meet the burial and all of the funeral expenses of the plaintiff, under this interpretation of this provision of the will of Robert S. Barr. I further direct that the reasonable costs and expenses of this litigation be paid out of the assets of the said estate so set aside to await the determination of this action, and that the balance be distributed under a decree of the surrogate of the county of Madison in harmony with the other provisions of said will.

Ordered accordingly.